IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

DANIEL KERSTETTER, #438048        *

    Plaintiff        *

    v        *        Civil Action No. DKC-17-604

DR. PAUL MATERA        *

    Defendants        *

\*\*\*

**MEMORANDUM OPINION**

Daniel Kerstetter, a self-represented litigant formerly incarcerated at the Eastern Correctional Institution in Westover, Maryland ("ECI"), filed a civil rights complaint under 42 U.S.C. § 1983, seeking unspecified money damages and injunctive relief mandating that he be provided appropriate medical care. Kerstetter alleges that a physician employed by Wexford Health Source, Inc. ("Wexford"), Paul Matera, M.D., was deliberately indifferent to his medical needs in violation of the Eighth Amendment by failing to treat adequately his ventral hernias and pancreatic mass and provide appropriate pain relief. ECF No. 1.

The court earlier stated that the claims against Defendant Wexford would be dismissed on March 20, 2017. ECF No. 7. Defendant Matera seeks to dismiss the case or, alternatively, moves for summary judgment. ECF No. 14. Kerstetter opposes the dispositive motion (ECF No. 16), and moves for appointment of counsel.[1] ECF No. 17. Matera has filed a Reply.[2] ECF

---

[1] Kerstetter seeks counsel because the 200-plus pages of medical records attached to Matera's dispositive motion are difficult for him to interpret. ECF No. 17, p. 1. A federal district court judge's power to appoint counsel under 28 U.S.C. § 1915(e)(1) is discretionary, and an indigent claimant must present "exceptional circumstances." *See Miller v. Simmons*, 814 F.2d 962, 966 (4th Cir. 1987). Exceptional circumstances exist where a "pro se litigant has a colorable claim but lacks the capacity to present it." *See Whisenant v. Yuam*, 739 F.2d 160, 163 (4th Cir. 1984), abrogated on other grounds by *Mallard v. U.S. Dist. Ct.*, 490 U.S. 296, 298 (1989) (holding that 28 U.S.C. § 1915 does not authorize compulsory appointment of counsel). The complaint allegations are well articulated, and the medical records, although extensive, are fully summarized in the Matera affidavit. Appointment of counsel is denied.

No. 18. After review of the papers filed, the court finds a hearing on the pending matters unnecessary. *See* Local Rule 105.6 (D. Md. 2016).

**Standard of Review**

Because matters outside the pleadings are presented in Defendant's dispositive motion, it is considered a motion for summary judgment. Fed. R. Civ. P. 12(d). Summary judgment is governed by Fed. R. Civ. P. 56(a) which provides that:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

*Anderson v. Liberty Lobby, Inc.*, 477 U. S. 242, 247-48 (1986) (emphasis in original).

"The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.,* 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The court should "view the evidence in the light most favorable to . . . the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness' credibility."

---

[2] In reply, Matera argues that Kerstetter cannot raise a medical malpractice claim at this stage in the litigation. ECF No. 18 at p. 1-2. To the extent that Kerstetter's opposition raises a state tort claim for negligence or malpractice, this court declines to exercise supplemental jurisdiction over the claim, pursuant to 28 U.S.C. § 1367(c)(3) and (4), on the basis that Kerstetter will not prevail on the underlying Eighth Amendment claim and has not established that he has presented such claim to the Maryland Health Claims Arbitration Board. *See* Md. Code Ann., Cts & Jud. Proc. § 3-2A-04 *et seq.* Maryland law requires a medical malpractice claim to be filed with the Health Claims Arbitration Board as a condition precedent to filing a malpractice or negligence suit. The complaint does not indicate that the condition has been met, and any claim of medical malpractice would be subject to dismissal without prejudice. *See Attorney General v. Johnson,* 385 A.2d 57 (Md. 1978).

*Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002). The court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat,* 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

**Background**

Kerstetter is in his mid-fifties and suffers from diabetes and ventral hernias.[3] ECF No. 14-4, pp. 1, 11.[4] On May 21, 2015, he received an intake examination by Physician's Assistant ("PA") Peter Stanford. Kerstetter, who reported three prior hernia repairs, was positive for an abdominal mass, had a large, tender, reducible incisional hernia in the central right incision area near a femoral aortic graph, and wore a hernia belt. *Id.*, pp. 1-4.

On August 10, 2015, Kerstetter submitted a sick call slip complaining of stomach pain due to his incisional hernia and his job assignment. *Id.,* p.5. Two weeks later, on August 26, 2015, he was seen by Dr. Matera, who noted his large recurrent ventral hernia. *Id.,* pp. 6-7. Kerstetter reported no recent blood in his stool, but complained of intermittent, crampy abdominal pain in addition to hernia pain. *Id.* Kerstetter had a binder (compression wrap) but had not been using it due to increased pain. He also stated that although he had a light duty kitchen job, he recently had been assigned tasks that involved lifting. Dr. Matera agreed the binder should not be used and Kerstetter should not perform heavy lifting. *Id.*, p. 7. Dr.

---

[3] A ventral hernia is a bulge through an opening in the muscles on the abdomen. The hernia can occur at a past incision site, above the navel, or in other weak abdominal muscle sites along the abdominal wall. *See* https://www.healthline.com/health/ventral-hernia.

[4] This opinion cites to the electronic docket. The medical record is found at ECF No. 14-4. Dr. Matera's affidavit, which contains a summary of the medical record, is found at ECF No. 14-5.

Matera noted that a GI (gastrointestinal) consult would likely be needed, and a CT scan and hernia surgery may be necessary. *Id*., p. 6.

A consult was submitted for gastroenterology, surgery, CT scan, and a teleconference to determine a treatment plan. *Id.,* p. 8. Because Kerstetter had reported blood in his stool in the prior month, guaiac stool tests[5] were performed, one of which was positive. Kerstetter had crampy abdominal pain without nausea or vomiting, and his vitals were stable. *Id.* Matera wanted to assess whether Kerstetter had a vascular perfusion component to the bleeding,[6] i.e., intermittent ischemic bowel stemming from his previous aortic graft, or hernia-induced intermittent strangulation causing pain and/or bleeding. *Id.*

On September 10, 2015, Kerstetter was seen by Dr. Matera for a scheduled provider visit, and asked about the status of his consult. Dr. Matera indicated it was pending University of Maryland collegial discussion. Kerstetter reported that he had lost his job, and agreed with Dr. Matera that he should only work a light duty job. The hernia was stable, and Kerstetter was prescribed two 325 mg. Tylenol, twice daily. *Id.*, pp. 9-10.

On October 15, 2015, Ruth Pinkney, P.A. examined Kerstetter and noted an extremely large and painful ventral hernia and abdominal tenderness in the right lower quadrant (RLQ). Although a consult had been previously sent in September, another was submitted that day. *Id.*, pp. 11-13.

On October 16, 2015, Kerstetter was seen by Jason Clem, M.D., and a gastroenterologist, Dr. Abdi, at a telemed conference. Dr. Abdi assessed a lower GI bleed,

---

[5] The stool guaiac test looks for hidden (occult) blood in a stool sample. *See* https://medlineplus.gov/ency/article/003393.htm.

[6] Perfusion is the passage of fluid through the circulatory or lymphatic system to an organ or into tissue. Poor perfusion, known as ischemia, causes health problems. *See* https://en.wikipedia.org/wiki/Perfusion.

possibly anorectal and not diverticulosis, with a lesser suspicion for aortoenteric fistula and/or ischemia.[7]  *Id.*  Dr. Abdi recommended a CT scan of the abdomen, and a consult for the CT was submitted.  On October 21, 2015, the CT consult was approved.  *Id.,* pp. 14-20.

On November 9, 2015, Kerstetter underwent the CT scan, which revealed a previous ventral hernia repair using mesh; a large hernia inferior to the mesh to the right of midline containing small bowel and mesentery; a smaller hernia more superiorly containing an anterior portion of transverse; a "somewhat concerning" 3cm low-density mass in the pancreatic body (malignancy not excluded); a patent (obvious) aortobifemoral bypass graft; and no other evidence of active disease or malignancy in the abdomen or pelvis.  *Id.,* pp. 21-23.  Kerstetter reviewed the results with PA Pinkney on December 4, 2015, and a follow-up referral to GI was submitted.  *Id.,* pp. 24-25.

On December 21, 2015, Kerstetter submitted a sick call to obtain an update as to the progress of his testing.  On December 30, 2015, he submitted a sick call to renew medications.  *Id.,* pp. 26-27.  That same day, December 30, 2015, he was seen by Dr. Matera for a chronic care visit.  *Id.,* pp. 28-29.  Vital signs, weight, and lab results were normal, and Kerstetter reported Tylenol was only somewhat effective, so he was taking his cell mate's Indocin[8] and wearing his binder.  Dr. Matera prescribed Indomethacin[9] in addition to his Tylenol.  *Id.*  On January 14, 2016, Kerstetter submitted a sick call slip to renew medications.

---

[7] Anorectal problems affect the anus or rectum.  *See* https://en.wikipedia.org/wiki/Anorectal_anomalies. Diverticulosis is a condition wherein multiple pouches caused by weaknesses of muscle layers in the colon wall form.  *See* https://www.google.com/search?  An aortoenteric fistula is an abnormal connection between the aorta and the GI tract.  *See* https://www.uptodate.com/contents/aortoenteric-fistula-recognition-and-management.

[8] Indocin is a nonsteroidal anti-inflammatory drug (NSAID) used to decrease swelling and pain.  *See* https://www.webmd.com/drugs/2/drug-9252-5186/indocin-oral/indomethacin-oral/details.

[9] Indomethacin is an NSAID that reduces hormones that cause inflammation and pain.  *See* https://www.drugs.com/mtm/indomethacin.html.

*Id.*, p. 30. On January 20, 2016, during a scheduled provider visit with PA Bruce Ford, Kerstetter asked about the follow-up on his GI consult. Ford sent an email to see if the CT scan results had been sent to Dr. Abdi, and what recommendations were available. *Id.*, pp. 31-32. The next day, January 21, 2016, Jason Clem, M.D. entered a note that after consultation regarding the CT scan results. Dr. Abdi wanted Kerstetter to receive an endoscopic ultrasound with biopsy to identity the pancreatic mass. A consult was placed for the endoscopic ultrasound with biopsy. *Id.*, pp. 33-34. On January 27, 2016, endoscopic biopsy was approved. *Id.*, p. 36. The biopsy was scheduled to be done in March by Dr. Darwin at the University of Maryland. *Id*.

At a follow-up visit, Kerstetter stated Tylenol was not sufficient for his pain, which was worsening, and his abdominal binding was no longer holding its elasticity. It was recommended that abdominal measurements be taken at the next chronic care encounter to order a replacement binder, and the Tylenol prescription was increased to extra strength 500mg. *Id.*, pp. 37-38.

During a March 20, 2016, sick call visit, Kerstetter could not push his lower right quadrant hernia back in, and reported pain at the level of 10/10. Dr. Clem ordered Kerstetter be given 200 mg. of Motrin and returned to his housing unit. If pain persisted, further evaluation would be provided. *Id.*, pp. 39-41. That same day, March 20, 2016, Kerstetter's hernia was evaluated by Ben Oteyza, M.D., and he was sent by ambulance to the Peninsula Regional Medical Center ("PRMC") emergency room to evaluate and treat the irreducible hernia. *Id.*, pp. 42-44.

Kerstetter was admitted to PRMC for hernia surgery. His discharge diagnosis was: 1) incarcerated hernia[10] status post exploratory laparotomy[11] with small bowel resection repair of incisional hematoma with biological mesh; 2) diabetes; 3) hospital acquired pneumonia; 4) probable chronic obstructive pulmonary disease; and 5) a stable pancreatic mass. *Id.,* pp. 40-42. Five days of Levaquin[12] was prescribed. *Id.*, pp. 43-44.

Upon returning to ECI on April 4, 2016, Kerstetter was seen by Dr. Clem and admitted to the prison infirmary. His Levaquin prescription was continued and a consult was placed for follow-up. *Id.,* p. 45. Skilled nursing care was provided in the infirmary from April 4 to April 7, 2016. *Id.,* pp. 46-50 and 53--63.

On April 7, 2016, Kerstetter was again seen by Dr. Clem, who noted Kerstetter did not require pain medications, tolerated his diet, and passed gas and stool without blood. The incision was starting to separate, but would be corrected with steri-strips and an abdominal binder and, if necessary, with additional stitches. The pneumonia had resolved and Kerstetter had no fever. A follow-up with the PRMC surgeon was set for April 12, 2016. Kerstetter was discharged from the infirmary to general population. *Id.,* pp. 64-66.

On April 8, 2016, Kerstetter began daily nurse visits for wound care. He denied pain. *Id.,* pp. 67-69. On April 11, 2016, Nurse Practitioner Sheila Kerpelman provided wound evaluation. *Id.,* pp. 71-72. At the top of the laparotomy scar were two 2 mm openings draining a small amount of serous (thin and clear) discharge; brown, crusty discharge was found over an

---

[10] An "incarcerated hernia" is one that cannot be pushed back into place because it is trapped in the abdominal wall. *See* https://www.herniasurgeryrecovery101.com/hernia-surgery-recovery/incarcerated-hernia/.

[11] Laparotomy is an operation to open the abdomen. *See* https://www.medicinenet.com/script/main/art.asp?articlekey=6212.

[12] Levaquin is an antibiotic used to treat bacterial infections that cause bronchitis or pneumonia. *See* https://www.drugs.com/Levaguin.html.

7

old drain site. The area was cleaned with wound care irrigation and three steri-strips over the fistulas were removed. Kerpelman rinsed the entire scar, fistula and wound with hydrogen peroxide prior to removal, then dried the area and reapplied steri-strips and a non-adhesive pad. *Id*. Paper tape was applied well away from the surgical site. *Id*. The next day, on April 12, 2016, Kerpelman noted the fistula was draining. No fever or chills were reported, and pain was well controlled. The fistula was slightly larger, with a 3 mm x 2 mm opening, and the dressing was saturated with green/serous drainage. A scab had discharged and a pink oval-shaped granulating wound, 4 mm in size, was exposed. The lap scar was less red. The wound was cleaned and dressed without complaint, and a wound culture was obtained. *Id*., pp. 73-74. Daily nursing wound care checks continued from April 13 to April 18, 2016. *Id*., pp. 76, 79-80, and 82.

On April 14, 2016, Kerstetter was seen by Dr. Matera for a chronic care visit. He had no fever or discharge. Dr. Matera noted that Kerstetter reported no pain. *Id.,* pp. 77-78.

The wound culture from April 12th was negative, but a repeat CBC (blood work) was needed, and Kerstetter was scheduled for follow-up care. *Id*., p.81. On April 19, 2016, Dr. Curry examined Kerstetter for a post-operative follow-up visit and noted that the incision had a small amount of breakdown at one end, drainage, and some inflammatory changes along both sides of the lower portion of the incision. No signs of infection were noted, and potential complications were discussed. Kerstetter was to continue daily dressing changes, but could shower. *Id.*, pp. 83-85. Follow up instructions were sent to Dr. Clem and the housing annex nurse. *Id.,* pp. 86-87.

Daily nursing care checks continued from April 19 to April 26, 2016. Kerstetter continued to have yellow/green discharge from the wound. *Id.,* pp. 88-93. On April 27, 2016,

Kerpelman noted an oval, open draining fistula 0.75cm in size, at the proximal end of a well healed midline incision. A moderate amount of yellow/green thick discharge was noted without odor and minimal surrounding erythema. A May 5, 2016 follow up with Dr. Curry was noted. *Id.,* pp. 94-95.

On April 30, 2016, Kerstetter's dressing change schedule was reduced to Monday, Wednesday and Friday, and Kerstetter was given supplies to change his own dressing. The upper incision was clean, dry and intact, and no symptoms of infection were observed. *Id.,* p. 96.

On May 5, 2016, Kerstetter told sick call personnel he needed more dressing supplies. He was reminded that he was going to an outside doctor the following day. Kerstetter then stated that he had a half bag of gauze and did not have an immediate need for supplies. *Id.,* p. 98.

On May 6, 2016, Kerstetter was seen by Dr. Curry for follow-up. He had three openings at the wound line that were treated with silver nitrate. Kerstetter was reminded to continue daily dressing changes, showering, and washing with soap and water and to follow-up in one week. If a fever, redness or purulent discharge developed, he was to contact the doctor immediately. *Id.*, p. 100.

Nursing wound care checks continued May 6 to May 15, 2016. *Id.,* pp. 101-107. Yellow/green discharge continued, but no pain or symptoms of infection were noted. *Id*.

On May 19, 2016, Kerstetter was seen by Dr. Matera for a scheduled provider visit. *Id.,* pp. 108-109. He voiced no complaints, stated the incision was closing, reported no purulent discharge or pain, and had all his supplies. *Id.*

On June 27, 2016, Kerpelman noted two fistulas that were draining a moderate amount of purulent discharge. No odor was detected. *Id.,* pp. 110-112.

On July 25, 2016, Kerpelman noted persistent draining fistulas and ordered a new consult for general surgery to address the problem. *Id.*, pp. 114-116. On August 15, 2016, surgical consult was approved. *Id.,* p. 117. On August 17, 2016, Kerstetter was in the infirmary in preparation for his biopsy, which occurred the following day at PRMC. The mass was biopsied without complications, and Kerstetter returned to ECI. *Id.,* pp. 118-124.

On August 19, 2016, Nurse Practitioner Stephanie Cyran noted Kerstetter's abdominal dressing was dry. It was noted he was approved for a follow-up with Dr. Charbel, and consult paperwork was submitted. *Id.,* pp. 121-123.

On August 23, 2016, Kerstetter had a GI appointment with Dr. Charbel at PRMC to discuss the biopsy, which showed no malignant cells present in the mass, which was likely a cyst or lesion. *Id.,* pp. 124-128. The recommendation was to do a follow-up CT scan in three months. If no changes were observed, no further follow-up was necessary. *Id*. On August 26, 2016, paperwork for a CT scan and GI follow-up was submitted. *Id.,* pp. 130-131.

At the September 6, 2016, follow-up visit, Dr. Curry found two areas of non-healing fistulas at midline that occasionally drained some serous/bloody drainage. There was no feculence, purulence or other symptoms. Dr. Curry opined that Kerstetter had a continuously draining sinus tract/seroma[13] from his surgery that was not infected and had minimal drainage that seemed to be decreasing. The sites were treated with silver nitrate. Surgery could be

---

[13] A seroma is a collection of fluid that builds up under the skin's surface after surgery. *See* https://www.healthline.com/health/seroma.

considered, but Dr. Curry recommend waiting a few months to see if the fistulas would heal on their own. *Id.,* pp. 132-134.

On September 6, 2016, Kerstetter was approved for a CT scan. *Id.,* p. 136. During a September 12, 2016 chronic care clinic visit, PA Pinkney noted the upper incision continued to drain, but two other draining sites had closed. Kerstetter indicated he changed his bandages several times a day. Drainage of non-odorous serous greenish discharge was noted, without redness or tenderness. Medications were renewed. *Id*., pp. 137-139.

Follow-up with Dr. Curry was approved on October 1, 2016. *Id.,* p. 144. During the October 18, 2016, visit, Dr. Curry found one non-healing fistula on the midline incision that occasionally produced serous/bloody drainage, but no feculence, purulence or other symptoms were reported. Kerstetter reported changing a small gauze pad twice daily. Dr. Curry prescribed a course of Levaquin 750 mg for seven days. *Id.,* pp. 147-149.

On October 20, 2016, Kerstetter was seen by Registered Nurse Erica N. McKnight. His dressing was changed and he was given Levaquin to keep for self-administration. *Id.,* p. 1561. On October 25, 31 and November 8, 2016, Kerstetter was provided dressing supplies. *Id*., pp. 152-154.

A November 16, 2016, a CT scan revealed that the large ventral hernia seen on March 20, 2016, was no longer evident. *Id.,* pp. 156-157. There was a small hernia to the right of midline at or close to the previous hernia site which contained a small loop of small bowel, without obstruction. There was focal distension of small bowel in the region of the anastomotic sutures, possibly the loop of small bowel that was distended because of obstruction on March

20, 2016.  *Id*.  The pancreatic mass was a stable cystic structure.  *Id*.  Because it was stable, no further follow-up was needed.  *Id.,* pp. 158-159.  The fistula continued to drain.  *Id*.

On November 22, 2016, Kerstetter complained of increased fistula drainage.  McKnight noted bloody purulent drainage, normal in consistency.  The dressing was changed and Kerstetter was scheduled to see a provider in 2 weeks.  *Id*., p. 160.

On December 7, 2016, Dr. Matera examined Kerstetter at the chronic care clinic.  Vital signs were stable.  *Id.,* pp. 162-164.  A consult submitted for a follow-up with Dr. Curry was approved on December 21.  *Id.,* p. 165 & 167.

On December 14 and 28, 2016, Kerstetter was provided dressing supplies.  *Id.,* pp. 166 & 168.  Supplies also were provided on January 10, 2017.  Kerstetter requested examination, and a soft lump in the left upper quadrant was noted.  He was advised to submit a sick call request if he experienced any changes.  *Id.,* p. 169.  Supplies were also provided on January 20, 30, and February 10, 2017.  *Id.,* pp. 170-172.

On February 21, 2017, Kerstetter was seen by gastroenterologist Dr. Daniels for a follow up of the pancreatic mass.  The cyst had not increased in size and was below the cancer margin.  It was recommended to repeat a biopsy in August.  The non-healing draining fistula was recommended for surgical repair.  *Id.,* pp. 173-176.

On February 23 and March 8, 2017, Kerstetter was provided dressing supplies.  *Id.,* pp. 178 & 183.  On February 27, 2017, he was seen by Cyran, N.P., for a chronic care clinic visit.  *Id*., pp. 179-181.  The December consult for surgical follow up was resubmitted.  *Id*., p. 182.

On March 9, 2017, Kerstetter saw McKnight, R.N. at sick call.  *Id.,* p. 184.  The top fistula site was open and draining blood discharge.  Kerstetter denied pain.  *Id.*

On March 13, 2017, Kerstetter was seen by Nurse Practitioner Deborah Tabulov at a scheduled provider visit. *Id.,* pp. 185-186. He stated that the upper fistula felt like a hard knot, then a day later looked like a big pimple, and he had squeezed a lot of pus out. *Id.* Lab cultures were taken. *Id.*

On March 16, 2017, lab results revealed enterobacter bacterium present sensitive to Bactrim. *Id.,* p. 187. Kerstetter was prescribed Bactrim twice a day for two weeks. *Id.* He saw nurses for wound care on March 16, 20, 21, 22, and 27, 2017. *Id.,* pp. 188-192.

On March 30, 2017, Kerpelman noted that Kerstetter was tolerating Bactrim without adverse gastrointestinal effects and was keeping the site clean and dry with pads and tape. Kerstetter was told he would be scheduled to see the surgeon. *Id.,* pp. 193-194.

Internal notes indicate that on March 31, 2017, Kerstetter was seen by Dr. Curry for a follow up. *Id.,* pp. 196-198. Dr. Curry believed that mesh from a previous surgery before the emergency surgery was causing chronic drainage due to a sinus tract/seroma, and recommended abdominal wall debridement with mesh removal and primary closure. *Id.* Hernia repair was not recommended due to surgical procedure for removal of a chronically infected foreign body and the desire to avoid contaminating the new mesh. *Id.* A surgical consult was submitted on April 6, 2017. *Id.,* p. 198.

Kerstetter continued to receive dressing supplies. *Id.,* pp. 199-201. On May 1, 2017, he was seen for wound care and left upper quadrant and right lower quadrant protrusions, which Kerstetter believed were new hernias, were noted. *Id.,* p. 202. On May 2, 2017, Kerstetter had pre-operation labs taken. *Id.,* p. 203. He was seen for nursing wound care on May 6 and 8, 2017. *Id.,* pp. 204-205. Kerstetter received a pre-operation exam on May 11,

2017, and was cleared for surgical debridement. *Id.,* pp. 208-209. From May 15 to May 17, 2017, he was seen for nursing wound and general infirmary care. *Id.*, pp. 210-214.

On May 17, 2017, Kerstetter had surgical debridement at PRMC. *Id.,* pp. 216-222. Dr. Curry performed exploration of the abdominal wound with mesh removal and primary abdominal closure, and Kerstetter was stable and ready for discharge the same day. *Id.*

**Analysis**

The Eighth Amendment prohibits "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment, *Gregg v. Georgia*, 428 U.S. 153, 173 (1976), and "[s]crutiny under the Eighth Amendment is not limited to those punishments authorized by statute and imposed by a criminal judgment." *De' Lonta v. Angelone*, 330 F. 3d 630, 633 (4th Cir. 2003), citing *Wilson v. Seiter*, 501 U.S.294, 297 (1991). In order to state an Eighth Amendment claim for denial of medical care, a plaintiff must demonstrate that the actions or inactions of the defendants amounted to deliberate indifference to a serious medical need. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976). However,

> Deliberate indifference is a very high standard – a showing of mere negligence will not meet it. . . . [T]he Constitution is designed to deal with deprivations of rights, not errors in judgments, even though such errors may have unfortunate consequences….

*Grayson v. Peed*, 195 F.3d 692, 695- 96 (4th Cir. 1999). Deliberate indifference to a serious medical need requires proof that, objectively, the plaintiff was suffering from a serious medical need and that, subjectively, the prison staff were aware of the need for medical attention but failed to either provide it or ensure the needed care was available. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

While the medical condition at issue must be serious, *see Hudson v. McMillian,* 503 U.S. 1, 9 (1992) (no expectation that prisoners will be provided with unqualified access to health care), proof of an objectively serious medical condition does not end the Court's inquiry. The subjective component requires "subjective recklessness" in the face of the serious medical condition. *See Farmer*, 511 U.S. at 839– 40. "True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk." *Rich v. Bruce*, 129 F. 3d 336, 340 n. 2 (4th Cir. 1997). "Actual knowledge or awareness on the part of the alleged inflicter . . . becomes essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'" *Brice v. Virginia Beach Correctional Center*, 58 F. 3d 101, 105 (4th Cir. 1995) quoting *Farmer* 511 U.S. at 844. If the requisite subjective knowledge is established, an official may avoid liability "if [he] responded reasonably to the risk, even if the harm was not ultimately averted." *See Farmer*, 511 U.S. at 844. Reasonableness of the actions taken must be judged in light of the risk the defendant actually knew at the time. *See Brown v. Harris*, 240 F. 3d 383, 390 (4th Cir. 2000); citing *Liebe v. Norton*, 157 F. 3d 574, 577 (8th Cir. 1998) (focus must be on precautions actually taken in light of suicide risk, not those that could have been taken).

Kerstetter counters that he did not receive full treatment until he filed this lawsuit. ECF 16-1, pp. 2, 4. He also claims that the delay in providing additional surgery and failure to provide adequate pain medication is governed by cost. *Id.*. He states that he was not "put on pain medication" after his August, 2015 reports of continuous pain (*id.*), and contradicts Dr. Matera's affidavit statement (ECF No. 14-5, ¶¶ 10-11) that Kerstetter reported that his wounds "were slowly resolving." ECF No. 16-1, p. 2. Kerstetter believes his emergency surgery and hospitalization would not have been necessary had it not taken ten months to address the

expanding hernia, and that requiring him to apply his own dressings and provide self-care for his wound delayed its healing. ECF No. 16-1, p. 4.

**Conclusion**

None of Kerstetter's arguments is sufficient to change the outcome of this case. The uncontroverted medical record demonstrates that Kerstetter received constitutionally adequate medical care. In addition to exhaustive diagnostic testing, Kerstetter received pain medication,[14] surgery, and follow-up care. Any delay in providing surgery appears justified while medical specialists attempted to discern the precise cause(s) of Kerstetter's illnesses, including a pancreatic mass that ultimately was found not malignant.

While it is unfortunate that healing was interrupted after additional infection (possibly caused by previous surgeries) was discovered, such problems cannot be attributed to deliberate indifference to Kerstetter's medical needs, nor to the fact that some self-care tasks were required of Kerstetter after medical personnel completed specialized nursing procedures. Defendant Matera's motion for summary judgment is granted. A separate order implementing the content of this memorandum opinion follows.

December 4, 2017 _____/s/_____
DEBORAH K. CHASANOW
United States District Judge

---

[14] In his opposition, Kerstetter states that he did not receive pain medication following his August 10, 2015, report of pain. ECF No. 16 at p. 2. The medical record does not demonstrate that pain medication was prescribed prior to September 10, 2015. However, Dr. Matera examined Kerstetter on August 26, 2015, noted intermittent cramping, and promptly began efforts to diagnose fully and treat his hernia and related conditions. Although it is unfortunate that Kerstetter suffered pain or distress during this phase of his diagnoses and treatment, that fact alone is insufficient to merit a determination that adequate medical care was withheld.